O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEREOSCOPE, LLC, a California limited liability company; CRONKITE & KISSELL, LLC, a California limited liability company; CLINT CRONKITE; DAVID KISSELL, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BANK NATIONAL ASSOCIATION, a national banking association; KIM GALBRAITH, an individual; PAULA OSWALD, an individual; OLALEYE FADAHUNSI, an individual, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CV 14-05593 DDP (SSx) <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO DISMISS** <br><br> [Dkt. Nos. 10, 11] |

Presently before the Court are Plaintiffs' Motion to Remand ("Mot. to Remand," Dkt. No. 11) and Defendants' Motion to Dismiss ("Mot. to Dismiss," Dkt. No. 10). Having considered the parties' submissions, the Court DENIES Plaintiffs' Motion to Remand and GRANTS Defendants' Motion to Dismiss.

///

///

## I.   BACKGROUND

Plaintiffs Clint Cronkite and David Kissell are the owners and principals of Cronkite & Kissell, LLC ("Cronkite & Kissell"), a California financial advisory and private investments company. (Complaint ("Compl."), Dkt. No. 1, ¶ 1.)   Cronkite & Kissell is a majority owner of Stereoscope, LLC ("Stereoscope"), a California production services company that specializes in 3D technology and film services.  (Id.)

On July 11, 2011, Plaintiff Stereoscope entered into a Joint Venture Agreement (the "Agreement") to produce motion pictures with Cutting Edge Pictures ("CEP"), a wholly owned subsidiary of The Reserve Entertainment Group ("TREG").  (Id. ¶ 2)  The Agreement required Stereoscope to obtain four percent of the film financing. (Id. ¶ 4.)  TREG and Stereoscope also formed Cutting Edge/Stereoscope Motion Pictures, LLC ("CESMP") pursuant to the Agreement.  (Id.)

Stereoscope raised $708,000 from investors to satisfy its four percent of the film financing.  (Id. ¶ 5.)  TREG formed Liberty City Movie, LLC ("LCM") to begin work on the Joint Venture's first project, and designated TREG as managing member and CESMP as a member.  (Id. ¶ 6.)  In or around March 2012, LCM opened an escrow account at U.S. Bank National Association ("U.S. Bank"), with LCM as borrower, EB Capital as lender, and U.S. Bank as the escrow agent.  (Id.)  The escrow agreement indicated that Allen Bates, a principal at TREG, was the authorized representative for LCM and that Joshua Estes was the authorized representative for EB Capital. (Exhibit A to Compl.)  The $708,000 Stereoscope had raised was placed into this LCM escrow account.  (Compl. ¶ 6)

Defendants are U.S. Bank National Association, which was the escrow agent for LCM's funds, as well as three employees of U.S. Bank who were involved in various ways with the administration of the LCM escrow account.  Defendant Kim Galbraith was the LCM account manager, Defendant Olaleye Fadahunsi was the investment manager, and Defendant Paula Oswald was a Vice President at U.S. Bank.  (Id. ¶¶ 6, 25-27.)  Of all Defendants, only Paula Oswald is a citizen of California.  (Id. ¶¶ 24-27.)

In or around May 2012, the relationship between TREG and Stereoscope began to deteriorate.  (Id. ¶ 7.)  On May 30, 2012, Stereoscope sent a "Notice of Claims" letter to U.S. Bank informing Galbraith of a dispute over the funds in the account and requesting that U.S. Bank freeze the funds pending resolution of the dispute.  (Id.)  On November 19, 2012, Stereoscope served TREG, CEP, and LCM with a demand for arbitration.  (Id.)  On November 21, 2012, U.S. Bank released $705,892 from the LCM escrow account to TREG.  (Id.)

On February 14, 2013, Judge Diane Wayne, who arbitrated the dispute, issued a preliminary injunction finding wrongdoing on the parts of TREG, CEP, and LCM.  (Id. ¶ 8.)  After Judge Wayne issued further subpoenas, Plaintiffs eventually learned that U.S. Bank had released the majority of the funds from the LCM escrow account and that TREG had formed another company, Checkmate Film Funding, LLC ("Checkmate"), which had put $500,000 of the withdrawn funds into a new escrow account with U.S. Bank.  (Id. ¶ 9.)  On October 31, 2013, Judge Wayne issued a final arbitration award in favor of Stereoscope.  (Id. ¶ 10.)

Plaintiffs claim that to date they have not recovered any of the funds stolen from the U.S. Bank escrow accounts.  (Id. ¶ 11.)

1   Defendants contend that U.S. Bank properly interpleaded the
2   $500,000 in the Checkmate escrow account in a state court action,
3   enabling Plaintiffs to recover that entire $500,000 amount less
4   attorney's fees.  (Mot. to Dismiss, Dkt. No. 10-1, at 2.)

5       Plaintiffs allege that U.S. Bank wrongfully refused to freeze
6   the funds in the original LCM escrow account and refused to obey
7   any instructions from Stereoscope after receipt of the "Notice of
8   Claims."  Plaintiffs further allege that Defendants subsequently
9   aided LCM and TREG's fraud in moving the LCM escrow funds and
10  concealing the fact that the funds had been moved.

11      On May 28, 2014, Plaintiffs filed a Complaint against
12  Defendants in Los Angeles Superior Court.  (Dkt. No. 1.)  The
13  Complaint alleged seven causes of action: (1) intentional
14  interference with contractual relations; (2) fraud and deceit; (3)
15  fraudulent concealment; (4) intentional interference with
16  prospective business relations; (5) gross negligence; (6)
17  intentional infliction of emotional distress; and (7) punitive
18  damages.

19      Defendants removed the case to federal court, arguing that
20  Plaintiffs included Defendant Paula Oswald as a sham defendant to
21  destroy diversity.  (Dkt. No. 1.)  Defendants subsequently filed a
22  Motion to Dismiss for Failure to State a Claim.  (Dkt. No. 10.)
23  Plaintiffs filed a Motion to Remand.  (Dkt. No. 11.)

24  **II.  LEGAL STANDARD**

25      **A.  Motion to Remand**

26      Diversity jurisdiction under 28 U.S.C. § 1332 requires
27  complete diversity of the parties; however, removal is proper
28  despite the presence of a non-diverse defendant when that defendant

4

1   was fraudulently joined.  Fraudulent joinder is a "term of art"

2   courts use to describe a non-diverse defendant who has been joined

3   to an action for the sole purpose of defeating diversity.  McCabe

4   v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).  A court

5   will disregard such a "sham" defendant for the purposes of

6   determining diversity if it is "obvious according to the settled

7   rules of the state" that the plaintiff has failed to state any

8   cause of action against the defendant in question.  Morris v.

9   Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir.2001).

10       The "strong presumption against removal jurisdiction" means

11   that the party asserting the fraudulent joinder bears the burden of

12   proof.  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.

13   1988).  The court should remand the case unless the moving party

14   can show fraudulent joinder by clear and convincing evidence.

15   Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206

16   (9th Cir. 2007).  If there is a "non-fanciful possibility" that the

17   plaintiff can state a claim against the non-diverse defendant, then

18   the court must remand the case.  Macey v. Allstate Prop. & Cas.

19   Ins. Co., 220 F. Supp. 2d 1116, 1118 (N.D. Cal. 2002).

20       **B.   Motion to Dismiss**

21       A 12(b)(6) motion to dismiss requires the court to determine

22   the sufficiency of the plaintiff's complaint and whether or not it

23   contains a "short and plain statement of the claim showing that the

24   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under

25   Rule 12(b)(6), a court must (1) construe the complaint in the light

26   most favorable to the plaintiff, and (2) accept all well-pleaded

27   factual allegations as true, as well as all reasonable inferences

28   to be drawn from them.  See Sprewell v. Golden State Warriors, 266

1   F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d

2   1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th

3   Cir. 1998).

4         In order to survive a 12(b)(6) motion to dismiss, the

5   complaint must "contain sufficient factual matter, accepted as

6   true, to 'state a claim to relief that is plausible on its face.'"

7   Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp.

8   v. Twombly, 550 U.S. 544, 570 (2007)).  However, "[t]hreadbare

9   recitals of the elements of a cause of action, supported by mere

10  conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

11  Dismissal is proper if the complaint "lacks a cognizable legal

12  theory or sufficient facts to support a cognizable legal theory."

13  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

14  Cir. 2008); see also Twombly, 550 U.S. at 561-63 (dismissal for

15  failure to state a claim does not require the appearance, beyond a

16  doubt, that the plaintiff can prove "no set of facts" in support of

17  its claim that would entitle it to relief).  A complaint does not

18  suffice "if it tenders 'naked assertion[s]' devoid of 'further

19  factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550

20  U.S. at 556).  "A claim has facial plausibility when the plaintiff

21  pleads factual content that allows the court to draw the reasonable

22  inference that the defendant is liable for the misconduct alleged."

23  Id.  The Court need not accept as true "legal conclusions merely

24  because they are cast in the form of factual allegations."  Warren

25  v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

26  **III.  DISCUSSION**

27       **A.  Motion to Remand**

28       Plaintiffs move to remand this case back to state court,

arguing that Defendant Paula Oswald was not fraudulently joined. Defendants do not dispute that Oswald, like Plaintiffs, is a citizen of California; rather, Defendants argue that Oswald is a sham defendant.  Both parties agree that Oswald is the only non-diverse defendant named in the Complaint.

Based on the allegations in the Complaint, the Court finds that Plaintiffs have not stated any possible cause of action against Oswald.  Plaintiffs assert fraud, intentional interference with prospective economic relations, gross negligence, and intentional infliction of emotional distress claims against Oswald. As Defendants point out, the only factual allegation made specifically against Oswald is that she advised LCM it could file an incumbency certificate listing an additional principal of LCM as an authorized representative for the LCM escrow account.

The elements of a fraud claim under California law are: "(1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." City of Atascadero v. Merrill Lynch, 68 Cal. App. 4th 445, 481 (1998).  Plaintiffs do not allege that Oswald herself misrepresented a material fact to Plaintiffs.  Plaintiffs allege that the incumbency certificate fraudulently listed TREG and its principals as "the only authorized representatives for LCM." (Compl. ¶ 65.)  However, it is unclear that the incumbency certificate was fraudulent, as it merely added an additional authorized representative to the account and was signed by LCM's existing authorized representative; furthermore, Plaintiffs have

1   not shown how this certificate induced their reliance in any way.

2       To prove fraudulent concealment under California law,

3   Plaintiff must show that: (1) the defendant concealed or suppressed

4   a material fact; (2) the defendant had a duty to disclose that fact

5   to the plaintiff; (3) the defendant intentionally concealed or

6   suppressed that fact with the intention of defrauding the

7   plaintiff; (4) the plaintiff was unaware of that fact and would not

8   have acted in the manner he did if he knew of the concealed or

9   suppressed fact at the time; and (5) the plaintiff sustained

10  resulting damage.  See Hahn v. Mirda, 147 Cal. App. 4th 740, 748

11  (2007).  Again, Plaintiffs have failed to plead facts supporting

12  the requisite elements of a fraudulent concealment claim in the

13  Complaint.  Alleging that Oswald aided LCM in filing an incumbency

14  certificate does not by consequence indicate that she concealed or

15  suppressed a material fact.  Furthermore, as Stereoscope was not a

16  party to the escrow agreement or the authorized representative for

17  LCM, Plaintiffs have not shown that Oswald or any other defendant

18  had a duty to Stereoscope.

19      The claim of gross negligence similarly fails; Stereoscope has

20  not pleaded facts that show Oswald owed them any kind of duty.

21      The intentional interference claim against Oswald fails

22  because Oswald was acting in her capacity as an employee of U.S.

23  Bank when she gave LCM information about filing the incumbency

24  certificate.  In fact, Plaintiffs allege specifically that Oswald

25  and the other employees were acting "within their official capacity

26  and with the authorization and ratification of U.S. Bank."  (Compl.

27  ¶ 94.)  When employees act in the scope of their employment,

28  California law states that they are protected by privilege.

8

1  <u>McCabe</u>, 811 F.2d at 1339.  Thus, the Court finds that the

2  intentional interference against Oswald fails as a matter of

3  California law.

4        Finally, the intentional infliction of emotional distress

5  claim has no support in the facts as pleaded in the Complaint.

6  Plaintiffs have not shown that Oswald engaged in any action that

7  was outrageous; rather, the Complaint only alleges that Oswald

8  advised LCM to file an incumbency certificate, a standard form for

9  escrow accounts.

10       The Court finds that it is "obvious according to the settled

11  rules of the state" that Plaintiffs have stated no claims against

12  Oswald.  Thus, the Court concludes that removal was proper in this

13  case, and moves on to addressing the question of whether Plaintiffs

14  have stated a claim against any of the Defendants.

15       **B.  Intentional Interference Claims**

16       To prove a claim for intentional interference with contractual

17  relations, Plaintiffs must show: "(1) a valid contract between

18  plaintiff and a third party; (2) defendant's knowledge of this

19  contract; (3) defendant's intentional acts designed to induce a

20  bread or disruption of the contractual relationship; (4) actual

21  breach or disruption and (5) resulting damage."  <u>Quelimane Co.,</u>

22  <u>Inc.v. Stewart Title Guaranty Co.</u>, 19 Cal.4th 26, 55 (1998).  To

23  prove a claim for intentional interference with prospective

24  economic advantage, "(1) an economic relationship between the

25  plaintiff and some third party, with the probability of future

26  economic benefit to the plaintiff; (2) the defendant's knowledge of

27  the relationship; (3) intentional acts on the part of the defendant

28  designed to disrupt the relationship; (4) actual disruption of the

1  relationship; and (5) economic harm to the plaintiff proximately

2  caused by the acts of the defendant." Korea Supply Co. v. Lockheed

3  Martin Corp., 29 Cal.4th 1134, 1153 (2003).

4      The Court finds that Plaintiffs have not stated a claim for

5  intentional interference, since Defendants' actions were not a "but

6  for" cause of the breach. See Hahn v. Diaz-Barba, 194 Cal. App.

7  4th 1177, 1196 (2011) (stating that a plaintiff must allege that

8  the contract would otherwise have been performed.) Plaintiffs

9  state in their Complaint that the relationship with TREG had begun

10  to deteriorate before they attempted to take back the escrow money

11  from the U.S. Bank account.  It appears from the Complaint that

12  after this deterioration, Plaintiffs' goal was to have TREG return

13  the investors' money to Plaintiffs, ending the Joint Venture

14  Agreement.  Based on the allegations in the Complaint, the Court

15  finds that Plaintiffs have failed to state a claim for intentional

16  interference, either with contractual relations or with prospective

17  business advantage, because Defendants were not a cause of the

18  disruption of the relationship between Plaintiffs and TREG.

19      **C.  Fraud Claims**

20      As stated above, claims of fraud or fraudulent concealment

21  require the showing of a misrepresentation or concealment of a

22  material fact.  The Court finds that Plaintiffs have not alleged

23  any material fact that was misrepresented to Plaintiffs.  Though

24  Plaintiffs allege that Defendants fraudulently concealed the

25  whereabouts of the funds that were formerly in the LCM escrow

26  account, Plaintiffs have not shown that Defendants owed them any

27  duty to inform them of the status of the funds under California

28  law.  See Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.,

27 Cal. 4th 705, 711 (2002) (stating that an escrow holder has "no
general duty to police the affairs of its depositers" and its
duties are "limited to faithful compliance" with the depositers'
instructions).

Furthermore, Plaintiffs have not pleaded facts that show
reliance on any alleged material facts that were misrepresented or
concealed.  The Complaint does not allege any actions that
Plaintiffs took in reliance on any statements or lack thereof by
U.S. Bank or its employees.

### D.  Gross Negligence Claim

A negligence claim first requires the pleading of the
existence of a duty.  Though Stereoscope may have had an interest
in the LCM escrow account, it was not an actual party to the
account and was not an authorized representative of LCM.
California law holds that not only are escrow agents limited to
"faithful compliance" with depositers' instructions, but also mere
knowledge of a third party's interest in an escrow does not give
rise to a duty of care to that third party.  Summit, 27 Cal. 4th at
711;  Jafari v. F.D.I.C., No. 12-CV-2982-LAB RBB, 2 F. Supp. 3d
1125, 1133 (S.D. Cal. Mar. 5, 2014).  The Court finds that
Plaintiffs have not pleaded a claim for gross negligence.

### E.  Intentional Infliction of Emotional Distress Claims

Under California law, the elements of intentional infliction
of emotional distress are: "(1) extreme and outrageous conduct by
the defendant with the intention of causing, or reckless disregard
of the probability of causing, emotional distress; (2) the
plaintiff's suffering severe or extreme emotional distress; and (3)
actual and proximate causation of the emotional distress by the

1  defendant's outrageous conduct."  <u>Christensen v. Superior Court</u>, 54

2  Cal. 3d 868, 903 (1991) (internal quotations omitted).  The

3  outrageous conduct "must be so extreme as to exceed all bounds of

4  that usually tolerated in a civilized community."  <u>Id.</u>

5       The Court finds that Plaintiffs have not pleaded facts that

6  support their claim of intentional infliction of emotional

7  distress.  Defendants simply carried out the instructions of LCM,

8  the named party on the escrow account, to withdraw funds.  The

9  conduct by Defendants, even assuming that they knew of Plaintiffs'

10  interest in the LCM escrow account, was not "so extreme as to

11  exceed all bounds of that usually tolerated in a civilized

12  community."

13       **F.  Punitive Damages Claim**

14       Although the caption of the Complaint states a claim for

15  punitive damages, the text of the Complaint does not do so.  Thus,

16  the Court finds that Plaintiffs have not pleaded a claim for

17  punitive damages.

18  **IV.  CONCLUSION**

19       For the foregoing reasons, Plaintiffs' Motion to Remand is

20  DENIED.  Defendants' Motion to Dismiss is GRANTED.  The Complaint

21  is dismissed with prejudice.

22

23

   IT IS SO ORDERED.

24

25  Dated: February 11, 2015

26                                        DEAN D. PREGERSON
                                     United States District Judge

27

28